HULL, Circuit Judge,
dissenting:
This important case of first impression in this circuit involves a Rule 12(b)(6) dismissal of the Government’s complaint and not entry of summary judgment. I dissent because the Government’s complaint clearly states a cause of action, and the district court erred in dismissing it.
The majority correctly concludes that Section 3729(a)(7) of the False Claims Act requires a specific, legal obligation to pay or to transmit money or property, at the time a false statement is made.[1] However, the majority incorrectly finds that the Government’s complaint fails to allege such an obligation. The specific allegations of the complaint show why the majority errs.
The complaint alleges that Pemco performed high-level maintenance of “C-130” aircraft for the Air Force and that Pemco had on its premises both older model and newer model “C-130” wings belonging to the Government. Paragraph 8 of the complaint asserts that Pemco possessed five wings belonging to the Government that “were not needed by Pemco for performance of its contracts with the United States,” and that thus Pemco initiated the Plant Clearance procedure in order to have the Government instruct Pemco regarding the return of the wings to the Air Force or other disposal.
Paragraph 9 of the complaint alleges that “[ujnder the Plant Clearance procedure, the contractor (in this case Pemco) advises the [Gjovernment that the contractor is holding certain property belonging to the United States in excess to the needs of its Government contract.” The complaint explains that the contractor may offer to purchase the property from the Government rather than have it returned. As alleged in paragraph 10 of the complaint, “Pemco submitted to the United States a document entitled ‘Inventory Schedule B’ which was part of the ‘Plant Clearance’ procedure mentioned above.”
The complaint continues that Pemco listed five wings, described those wings by two national stock numbers, and incorrectly identified the stock numbers. According to the complaint, Pemco used stock numbers referencing older, obsolete model wings worth $1,875, or $375 each, when, in fact, the wings Pemco actually had were newer model wings with a market value of over $2,071,526. The complaint alleges that Pemco sold just two of the five wings for $1,500,000. Pemco does not deny these allegations.
I agree with the majority that Pemco’s inventory schedule alone does not necessarily create a legal obligation to pay at the time the inventory schedule is submitted to the *1316 Air Force. But the majority errs in considering solely Pemco’s inventory schedule and overlooking Pemco’s contract with the Government that requires Pemco either to return these wings or to purchase them. The complaint specifically alleges that Pemco submitted this inventory schedule pursuant to its contract with the Air Force and that Pemco’s contract required Pemco to advise the Government about any property belonging to the Government in excess of the needs of its Government contract. Therefore, Pemco had a contractual obligation either to return (i.e., “transmit” under § 3729(a)(7)) excess property to the Government or to purchase (i.e., “pay” for under § 3729(a)(7)) excess property from the Government.[2]
The complaint has sufficient allegations to survive the granting of a motion to dismiss for failure to state a claim. The complaint alone contains express references to Pemco’s contract with the Air Force, and alleges that Pemco obtained the wings “as a result of [those] contracts,” and that the inventory schedule was being filed because these wings exceeded Pemco’s needs under its Government contract. The complaint expressly references Pemco’s obligations either to return the wings to the Government or to purchase the wings from the Government and that the inventory schedule was submitted in connection with those contractual obligations.
Pemco argues that it was required to return the wings only at the end of its Government contract or at an earlier date if required by the Government’s contracting officer. According to Pemco, because neither of those events had occurred, Pemco did not.have an existing obligation to return or pay for the wings at the time it submitted the inventory form. In addition, Pemco argues that the submission of the inventory form was merely an offer to purchase the excess wings but did not establish either an obligation to purchase or the specific purchase price. According to Pem-co, at best, this offer created only a contingent obligation to purchase — dependent on the Government’s inspection of the property and acceptance of Pemco’s offer.
These arguments ignore the complaint’s allegations that at the time Pemco submitted the inventory form, the wings were deemed excess. Indeed, Pemco only submitted the inventory form because the wings were deemed excess and it had a pre-existing contractual obligation to submit such a form. That Pemco offered to purchase the property and that a specific purchase price had not been agreed upon at the time Pemco submitted the inventory form are not the touchstone. As alleged in the complaint, Pemco had a contractual obligation to return excess Government property or to dispose of it in accordance with the Government’s instructions. This legal obligation was a specific, ongoing obligation during the life of the contract and did not begin or end at any one point in time. This is the relevant obligation and submitting the inventory form was just part of fulfilling this pre-existing contractual obligation.
The majority bases its opinion on United States v. Q International Courier, Inc., 131 F.3d 770 (8th Cir.1997). I agree with the Eighth Circuit’s reasoning but Q International Conner is totally different from this case because that decision did not involve a Government contract. Q International Courier involved a mail courier firm that transferred bulk mail from the United States to Barbados in order to remail the letters individually from Barbados to the United States. Id. at 772. Through this scheme, Q International Courier (“Quick”) was able to take advantage of the discounted rates the *1317 United States Postal Service charged the Barbadian postal service, achieving significant savings for its customers. Id. In contrast to this case, Quick was not a Government contractor. Id. at 772-73. Thus, any “obligation” Quick may have owed to the Government could only have derived from statutes, regulations, judgments — legal sources other than a written contract.
The Eighth Circuit in Q International Courier explicitly noted that the Government did not have a contract with Quick, thereby suggesting that a contractual duty would qualify as an “obligation” in its opinion. Id. at 773. In addition, the Eighth Circuit in Q International Courier concluded that no obligation to pay domestic postage rates could be found in any of the statutes or regulations cited by the Government. Id. at 773-74.
In contrast, Pemco had a written contract which expressly obligated Pemco to be responsible and accountable for the Government property in its possession and to return that property to the Government or dispose of the property in accordance with the Government’s instructions. In addition, the Government has pointed to regulations that obligate Pemco to return Government property not needed in the performance of the contract. Q International Courier, if anything, shows why the district court erred in dismissing the Government’s complaint for failure to state a claim under Rule 12(b)(6).
Therefore, I respectfully dissent.

. Section 3729(a)(7) provides for liability if ai person "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.” 31 U.S.C. § 3729(a)(7) (emphasis supplied).

. Because the district court disposed of this case on a motion to dismiss, the record below is extremely bare. Therefore, the text of tire dissent discusses only the allegations in tire complaint. However, the Government did attach to its appellate brief the Government property clause, and portions of Pemco’s contract showing incorporation of that clause in Pemco’s contract with the Air Force. The contract contained provisions expressly stating (1) that the Government retained title to all Government-furnished property, (2) that the contractor (Pemco) was responsible and accountable for all Government property provided under the contract, and (3) that all such property not consumed in performing the contract was to be returned to the Government, or disposed of according to its instructions, with proceeds of any such disposal being credited to the contract price or paid directly to the Government. Add. B at 4b-6b. Since these documents were not attached to the complaint in the district court, they cannot be considered on appeal.